UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| JOHN MARTIN LLC, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 08-cv-8185 |
| | : | |
| Plaintiff, | : | CLASS ACTION |
| | : | |
| vs. | : | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| | : | |
| CONSTELLATION ENERGY GROUP, INC., MAYO A. SHATTUCK III, KENNETH W. DEFONTES, JR., E. FOLLIN SMITH, JOHN R. COLLINS, DOUGLAS L. BECKER, JAMES T. BRADY, JAMES R. CURTISS, FREEMAN A. HRABOWSKI, III, NANCY LAMPTON, ROBERT J. LAWLESS, LYNN M. MARTIN, MICHAEL D. SULLIVAN, CITIGROUP GLOBAL MARKETS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, MORGAN STANLEY & CO. INCORPORATED, UBS SECURITIES LLC and WACHOVIA CAPITAL MARKETS LLC, | : | |
| Defendants. | : | |
| | x | DEMAND FOR JURY TRIAL |

## NATURE OF THE ACTION

1.       This is a securities class action on behalf of all persons or entities who acquired the publicly traded securities of Constellation Energy Group, Inc. ("Constellation" or the "Company") between January 30, 2008 and September 16, 2008, inclusive (the "Class Period"), including the Series A Junior Subordinated Debentures (hereinafter referred to as "Preferred Securities"), pursuant and/or traceable to the Company's false and misleading Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with the Company's June 27, 2008 Preferred Securities offering ("Offering"), seeking to pursue remedies under the Securities Act of 1933 ("1933 Act") and the Securities Exchange Act of 1934 ("1934 Act").

2.       Constellation is an energy company that conducts its business through various subsidiaries, including a merchant energy business and Baltimore Gas and Electric Company ("BGE").  The Company's merchant energy business is a provider of energy solutions for a variety of customers.  BGE is a regulated electric transmission and distribution utility company and a regulated gas distribution utility company with a service territory that covers the City of Baltimore and all or part of 10 counties in central Maryland.  The Company's operating segments are Merchant Energy, Regulated Electric and Regulated Gas.  Constellation's remaining non-regulated businesses design, construct and operate renewable energy, heating, cooling and cogeneration facilities for commercial, industrial and governmental customers throughout North America, as well as provide home improvements, service electric and gas appliances, service heating, air conditioning and plumbing to residential customers.

3.       On June 27, 2008, defendants consummated the sale of Constellation's Preferred Securities pursuant to the false and misleading Registration Statement, selling 18 million shares at $25.00 per share (including an overallotment option granted to the underwriters to purchase up to an

additional $67.5 million aggregate principal amount of Preferred Securities), for proceeds of approximately $435.8 million.

4.      Due to defendants' positive, but false statements, Constellation's stock closed as high as $88.25 per share on June 9, 2008.

5.      In July 2008, the Company reported favorable financial results and reaffirmed EPS guidance of $5.25-$5.75 per share for 2008.

6.      In August 2008, analysts questioned Constellation's accounting.  As *Associated Press* reported on August 12, 2008:

> Shares of utility company Constellation Energy Group Inc. plunged Tuesday after analysts raised questions about some aspects of the company's accounting and the implications of a credit downgrade.
>
> Constellation Energy stock shares fell $11.79, or 16.1 percent, to close at $61.25. Earlier in the session, the stock fell to $57.10, its lowest level in more than a year. The shares have traded as high as $107.97 in the past 52 weeks.
>
> Jefferies & Co. analyst Paul Fremont upgraded Constellation stock to "Hold" from "Underperform" on Tuesday, but said in a note to clients that he is looking forward to company executives answering questions about some of its accounting practices at an Aug. 28 meeting in Baltimore.
>
> In particular, Jefferies & Co. said it's puzzled by some of Constellation's characterizations of depreciation, cash flow and mark-to-market adjustments in recent financial material.

7.      Then, on September 15, 2008, investors and the market became aware of Constellation's exposure to Lehman Brothers Holdings Inc.'s ("Lehman") bankruptcy, which affected the Company's ability to engage in energy-related trades.

8.      With this news, Constellation's shares plunged to $47.99 from the Company's Class Period high of $97.34 per share.

9.      According to a *Bloomberg.com* article of September 16, 2008:

Constellation Energy Tumbles

Constellation Energy Group Inc. tumbled 36 percent to $30.76. The biggest U.S. power marketer had the steepest drop in the S&P 500 on concern credit market turmoil will hurt the company's search for a partner to share the risk of its burgeoning energy-trading business.

10.     Defendants were aware of the following material undisclosed information which contradicted their public statements, including in the Registration Statement/Prospectus:

(a)     Defendants were inflating Constellation's results through manipulations relating to the characterization of depreciation expense which inflated the Company's reported cash flows;

(b)     The Company's financial results were inflated by overly optimistic assumptions which were reflected in mark-to-market accounting;

(c)     The Company's exposure to credit problems of trading partners was much greater than represented – in fact, one of Constellation's key trading partners, Lehman, was having severe financial problems; and

(d)     The Company was not on track to report 2008 EPS of $5.25+ per share.

11.     While Constellation's stock was artificially inflated due to defendants' false statements, certain officers of the Company sold 69,590 shares of their Constellation stock for proceeds of $6.46 million.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to §§11 and 15 of the 1933 Act [15 U.S.C. §§77k and 77o], and under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5. Jurisdiction is conferred by §27 of the 1934 Act and §22 of the 1933 Act.

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §27 of the 1934 Act and §22 of the 1933 Act.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because certain of the underwriter defendants maintain their headquarters in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

15.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

16.     Plaintiff John Martin LLC acquired the Preferred Securities of Constellation pursuant or traceable to the June 2008 Offering and has been damaged thereby.

17.     Defendant Constellation is an energy company that conducts its business through various subsidiaries, including a merchant energy business and BGE.

18.     Defendant Mayo A. Shattuck III ("Shattuck") is President, Chief Executive Officer ("CEO") and Chairman of the Board of Constellation.  While Constellation's stock price was artificially inflated due to defendants' false statements, Shattuck sold 50,000 shares of his Constellation stock for insider trading proceeds of $4,681,500.  Shattuck signed  or authorized the signing of the false and misleading Registration Statement.

19.     Defendant Kenneth W. DeFontes, Jr. ("DeFontes") is President and CEO of BGE and Senior Vice President of Constellation.  While Constellation's stock price was artificially inflated due to defendants' false statements, DeFontes sold 3,640 shares of his Constellation stock for insider trading proceeds of $349,877.  DeFontes signed or authorized the signing of the false and misleading Registration Statement.

20.     Defendant E. Follin Smith ("Smith") has been a director of Constellation since  June 2007.  Previously, Smith was Senior Vice President and Chief Financial Officer ("CFO") from June

2001 until she retired from the Company in May 2007.  Smith signed or authorized the signing of the false and misleading Registration Statement.

21.    Defendant John R. Collins ("Collins") is Chief Financial Officer ("CFO") and Executive Vice President of Constellation.  While Constellation's stock price was artificially inflated due to defendants' false statements, Collins sold 15,000 shares of his Constellation stock for insider trading proceeds of $1,353,800.

22.    Defendant Douglas L. Becker ("Becker") has been a director of Constellation since 1998.  Becker signed or authorized the signing of the false and misleading Registration Statement.

23.    Defendant James T. Brady ("Brady") has been a director of Constellation since 1998.  Brady signed or authorized the signing of the false and misleading Registration Statement.

24.    Defendant James R. Curtiss ("Curtiss") has been a director of Constellation since 1994.  Curtiss signed or authorized the signing of the false and misleading Registration Statement.

25.    Defendant Freeman A. Hrabowski, III ("Hrabowski") has been a director of Constellation since 1994.  Hrabowski signed or authorized the signing of the false and misleading Registration Statement.

26.    Defendant Nancy Lampton ("Lampton") has been a director of Constellation since 1994.  Lampton signed or authorized the signing of the false and misleading Registration Statement.

27.    Defendant Robert J. Lawless ("Lawless") has been a director of Constellation since 2002.  Lawless signed or authorized the signing of the false and misleading Registration Statement.

28.    Defendant Lynn M. Martin ("Martin") has been a director of Constellation since 2003.  Martin signed or authorized the signing of the false and misleading Registration Statement.

29.    Defendant Michael D. Sullivan ("Sullivan") has been a director of Constellation since 1992.  Sullivan signed or authorized the signing of the false and misleading Registration Statement.

30.    The defendants referenced above in ¶¶18-19 and 21 are referred to herein as the "Officer Defendants."

31.    The defendants referenced above in ¶¶18, 20 and 22-29 are referred to herein as the "Director Defendants" and are named as defendants solely for violations of the 1933 Act.

32.    Defendant Citigroup Global Markets Inc. ("Citigroup") is a large integrated financial services institution that through subsidiaries and divisions provides commercial and investment banking services, commercial loans to corporate entities, and acts as underwriter in the sale of corporate securities.  Citigroup acted as an underwriter in the sale of preferred securities for Constellation's Offering, helping to draft and disseminate the offering documents.

33.    Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") provides capital markets services, investment banking and advisory services, wealth management, asset management, insurance, banking and related products and services on a global basis.  Merrill Lynch acted as an underwriter in the sale of preferred securities and acted as an underwriter for Constellation's Offering, helping to draft and disseminate the offering documents.

34.    Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a global financial services firm that, through its subsidiaries and affiliates, provides its products and services to customers, including corporations, governments, financial institutions and individuals.  Morgan Stanley assists public and private corporations in raising funds in the capital markets (both equity and debt), as well as in providing strategic advisory services for mergers, acquisitions and other types of financial transactions.  Morgan Stanley acted as an underwriter in the sale of preferred securities and acted as an underwriter for Constellation's Offering, helping to draft and disseminate the offering documents.

35.    Defendant UBS Securities LLC ("UBS") is the US investment banking and securities arm of UBS Investment Bank.  UBS Investment Bank provides a range of financial products and services worldwide.  UBS acted as an underwriter in the sale of preferred securities and acted as an underwriter for Constellation's Offering, helping to draft and disseminate the offering documents.

36.    Defendant Wachovia Capital Markets LLC ("Wachovia Capital") is the corporate and investment banking side of brokerage firm Wachovia Securities (both companies are subsidiaries of banking giant Wachovia).  Wachovia Capital provides financial and corporate advisory services, private capital, debt private placement, mergers and acquisitions advice, underwriting, and equity investing.  It also offers real estate financing, risk management services, and structured products such as asset-backed and mortgage-backed securities.  Wachovia Capital acted as an underwriter in the sale of preferred securities and acted as an underwriter for Constellation's Offering, helping to draft and disseminate the offering documents.

37.    The defendants referenced above in ¶¶32-36 are referred to herein as "Underwriter Defendants."

38.    Defendants Constellation and the Officer Defendants and the Director Defendants, who signed the Registration Statement, are ***strictly liable*** for the false and misleading statements incorporated into the Registration Statement.  The Underwriter Defendants drafted and disseminated the Offering documents and were paid over $14 million in connection therewith.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired shares of Constellation common stock during the Class Period and who acquired the Preferred

Securities pursuant and/or traceable to the Company's false and misleading Registration Statement for its Offering and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

40.    The members of the Class are so numerous that joinder of all members is impracticable. Constellation stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Constellation or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Constellation has more than 178 million shares of stock outstanding.

41.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        (a)    whether the 1934 Act was violated by defendants;

        (b)    whether the 1933 Act was violated by defendants' acts as alleged herein;

(c)     whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of Constellation; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## BACKGROUND

45.     Constellation, incorporated on September 25, 1995, is an energy company that conducts its business through various subsidiaries, including a merchant energy business and BGE. The Company's merchant energy business is a provider of energy solutions for a variety of customers.  BGE is a regulated electric transmission and distribution utility company and a regulated gas distribution utility company with a service territory that covers the City of Baltimore and all or part of 10 counties in central Maryland.  The Company's operating segments are Merchant Energy, Regulated Electric and Regulated Gas.  Constellation's remaining non-regulated businesses design, construct and operate renewable energy, heating, cooling and cogeneration facilities for commercial, industrial and governmental customers throughout North America, as well as provide home improvements, service electric and gas appliances, service heating, air conditioning, plumbing, electrical and indoor air quality systems, and provide natural gas marketing to residential customers in Central Maryland.

## THE FALSE AND DEFECTIVE REGISTRATION STATEMENT

46.     On or about July 24, 2006, Constellation filed with the SEC a Form S-3ASR (the Registration Statement) which would later be utilized for the Offering. The Registration Statement incorporated by reference all subsequently filed prospectuses. The Company would later issue a prospectus pursuant to this Registration Statement which concealed the Company's exposure to problems at Lehman, which was then in financial peril.

## THE FALSE AND MISLEADING STATEMENTS
## DURING THE CLASS PERIOD

47.     On January 30, 2008, Constellation issued a press release entitled "Constellation Energy Reports Strong Fourth Quarter and Full Year 2007 Results," which stated in part:

> Constellation Energy today reported full year 2007 adjusted earnings of $4.60 per share, up 27 percent from $3.61 of adjusted earnings per share (EPS) for the full year 2006. These results were in line with management's guidance range of $4.45 to $4.65 per share, which was revised upward in October 2007. Adjusted earnings exclude the impact of special items, discontinued operations, certain economic, non-qualifying hedges and synfuel earnings. On a GAAP basis, the company earned $4.50 per share in 2007, compared to $5.16 per share earned in 2006, which included an after-tax gain of $1.04 per share from discontinued operations.
>
>      For the fourth quarter of 2007, adjusted earnings of $1.48 per share were up 37 percent, compared to $1.08 per share earned in the same period last year. Reported GAAP earnings of $1.42 per share in the fourth quarter of 2007 compare to $2.22 per share in the fourth quarter of 2006, which included an after-tax gain of 76 cents from discontinued operations.
>
>      Constellation Energy reaffirmed earnings guidance for 2008 at $5.25 to $5.75 per share and expects to be in the middle to upper end of the range. Looking forward to 2009, the company expects to grow earnings 15 to 20 percent over projected 2008 earnings, representing an increase over the previously announced greater than 10 percent projected growth over 2008.
>
>      ***"2007 marked yet another outstanding year for our company as we grew adjusted earnings by 27 percent," said Mayo A. Shattuck III, chairman, president and chief executive officer of Constellation Energy.*** "Our success in driving strong earnings continues to translate into significant total return for Constellation Energy shareholders. Considering both stock price appreciation and dividends, Constellation Energy delivered total shareholder return of 52 percent in 2007, following the 23 percent and 35 percent total shareholder returns realized over the last two years.

- 10 -

"Last year, we made significant progress on several important fronts, including our efforts to assume a leadership role in the potential renaissance of new nuclear generation in the United States," said Shattuck. "Along these lines, we formed our UniStar Nuclear Energy joint venture with EDF and continue to move forward with planned new development projects under the UniStar Nuclear Energy banner. We advanced the expansion of our Merchant capabilities by building the foundation to make significant, multi-year investments in generation to expand capacity and enhance reliability in Maryland, PJM and other markets we serve. Through several strategic acquisitions, we grew our wholesale load-serving business in the regulated Southeast market, added to our upstream gas reserves and expanded the geographic footprint of our retail gas operations in the Midwest market. We also have successfully implemented key components of several programs at Baltimore Gas and Electric (BGE) that provide customers with tools and incentives to better manage their energy usage.

*"In coming years, we see clear and substantial earnings growth drivers and believe we are well positioned to deploy capital to pursue strategic market opportunities,"* said Shattuck.

48.     The Company's stock closed the month of January 2008 at nearly $94 per share. A week later, defendant Shattuck took advantage of this inflation, selling $4.68 million worth of his personal Constellation holdings for $93.63 per share.

49.     On April 30, 2008, Constellation issued its financial results for the first quarter of 2008, in a release which stated in part:

Constellation Energy today reported adjusted earnings of $0.95 per share for the first quarter of 2008, 8 percent lower than the $1.03 adjusted earnings per share earned in the same period last year. Adjusted earnings exclude the impact of special items, discontinued operations, certain economic, non-qualifying hedges and synfuel earnings. On a Generally Accepted Accounting Principles (GAAP) basis, the company earned $0.81 per share in the first quarter of 2008, compared to $1.07 per share in the same period last year.

Constellation Energy reaffirmed earnings guidance for 2008 at $5.25 to $5.75 per share, and for 2009, the company expects to grow earnings 15 to 20 percent over projected 2008 earnings.

"We are pleased with our first quarter results, which were in line with our expectations and reflect solid operating performance," said Mayo A. Shattuck III, chairman, president and chief executive officer of Constellation Energy. "We achieved several operational successes during the first quarter of 2008, including strong results from our generation fleet, driven by the roll- off of below-market hedges. Our Nuclear Group delivered particularly strong operating results, as we

- 11 -

successfully completed planned outages and limited nuclear fleet forced outages to less than 3 days.

"During the first quarter, we continued to transact opportunistically. We purchased the Hillabee Energy Center for approximately $155 million, which should be completed in 2010 at about 45 percent of the cost to build a new plant. This acquisition complements our roughly 3,100 megawatts of peak load in the Southeast, a growing area of our business. The addition of this generation asset continues to expand our growth strategy beyond competitive markets into regulated markets, while capitalizing on our expertise and extensive background in building and operating generating facilities. Consistent with our 'Invest-Develop-Harvest' strategy in upstream gas, we executed the sale of a non-operating interest in producing wells to Constellation Energy Partners, recognizing a gain of approximately $14 million.

"Lastly, during the first quarter, we announced a comprehensive settlement with political and regulatory leaders in Maryland," said Shattuck. "We believe the agreement provides far-reaching benefits for our customers, our investors and Maryland. All parties gain meaningfully in this carefully crafted settlement, and the overarching value is a return to regulatory stability and normalcy. There is commitment to putting the past behind us and focusing on discussions around the many energy-related challenges and opportunities that lie in Maryland's future. We fully recognize that the expression of many different views and concerns about Maryland's future energy policy will continue and is likely to spark rather intensive debates. However, we are confident that we can go about these discussions in a constructive manner now that the past has been laid to rest."

50.    On or about June 23, 2008, Constellation filed its Prospectus for the Offering (the "Offering Prospectus"), which forms part of the Offering Registration Statement and which became effective on June 27, 2008, and at least 18 million shares were sold to the public at $25.00 per share (including an overallotment option granted to the underwriters to purchase up to an additional $67.5 million aggregate principal amount of Preferred Securities), for proceeds of approximately $435.8 million.

51.    The Offering Registration Statement and Offering Prospectus were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

- 12 -

52.    The Offering Registration Statement and Offering Prospectus represented the following about the risk to Constellation's business and operations from counter-party risk:

> *Exposure to counterparty performance*.  Constellation Energy's merchant energy business enters into transactions with numerous third parties (commonly referred to as "counterparties").  In these arrangements, Constellation Energy is exposed to the credit risks of Constellation Energy's counterparties and the risk that one or more counterparties may fail to perform under their obligations to make payments or deliver fuel or power.  In addition, Constellation Energy enters into various wholesale transactions through Independent System Operators ("ISOs").  These ISOs are exposed to counterparty credit risks.  Any losses relating to counterparty defaults impacting the ISOs are allocated to and borne by all other market participants in the ISO.  These risks are enhanced during periods of commodity price fluctuations.  Defaults by suppliers and other counterparties may adversely affect Constellation Energy's financial results.

53.    However, this disclosure concealed the extent of Lehman's involvement as a counter-party and its own financial problems.

54.    The Prospectus incorporated by reference Constellation's other SEC filings, including its Form 10-Q for the first quarter of 2008.  The 10-Q represented that Constellation had first quarter net income of $145.7 million.  The Form 10-Q also represented that first quarter 2008 cash flow from operations was $345.1 million.

55.    The Offering was successful and Constellation raised ***$435 million***.  Constellation's common stock ended the month of June 2008 trading above $82 per share.

56.    On July 31, 2008, Constellation issued a press release announcing its second quarter 2008 results, stating in part:

> Constellation Energy today reported adjusted earnings of $1.82 per share for the second quarter of 2008, compared to $0.64 adjusted earnings per share (EPS) earned in the same period last year. Adjusted earnings exclude the impact of special items, including approximately $188 million pre-tax for the $170 per residential electric customer credit associated with the Maryland settlement, certain economic, non-qualifying hedges and synfuel earnings. On a Generally Accepted Accounting Principles (GAAP) basis, the company earned $0.95 per share in the second quarter of 2008, compared to $0.64 per share in the same period last year.

Constellation Energy reaffirmed earnings guidance for 2008 at $5.25 to $5.75 per share, and for 2009, the company expects to grow earnings 15 to 20 percent over projected 2008 earnings.

"Second quarter results significantly exceeded expectations and reflect solid execution throughout the enterprise," said Mayo A. Shattuck III, chairman, president and chief executive officer of Constellation Energy. "Our Global Commodities Group delivered strong new business results as rising commodity prices benefited our strategies in power, natural gas and coal markets. Constellation Energy's nuclear fleet continued its excellent operating performance in the second quarter. We successfully completed nuclear refueling outages at our R.E. Ginna Nuclear Power Plant and Nine Mile Point Nuclear Station Unit 2, while maintaining an extremely low forced outage rate at our three other nuclear facilities. We are proud of our three refueling outages that resulted in the first, third and 11th shortest durations out of 42 units that refueled during the first half of the year.

"During the second quarter, we expanded our existing fleet by 300 megawatts through the refurbishment of our Gould Street Power Plant in Baltimore and the acquisition of the West Valley Power Plant near Salt Lake City, strategically broadening our footprint in western markets," said Shattuck. "In addition, we continued to execute our 'Invest-Develop-Harvest' strategy with the sale of gas assets in Arkansas. With the purchase of Nufcor International Limited, we acquired specialized uranium capabilities and expanded our risk management services.

57.    On this news, Constellation's stock closed as high as $83.16 per share at the closing bell on July 31, 2008.

58.    In August 2008, analysts questioned Constellation's accounting.  As *Associated Press* reported on August 12, 2008:

Shares of utility company Constellation Energy Group Inc. plunged Tuesday after analysts raised questions about some aspects of the company's accounting and the implications of a credit downgrade.

Constellation Energy stock shares fell $11.79, or 16.1 percent, to close at $61.25. Earlier in the session, the stock fell to $57.10, its lowest level in more than a year. The shares have traded as high as $107.97 in the past 52 weeks.

Jefferies & Co. analyst Paul Fremont upgraded Constellation stock to "Hold" from "Underperform" on Tuesday, but said in a note to clients that he is looking forward to company executives answering questions about some of its accounting practices at an Aug. 28 meeting in Baltimore.

- 14 -

In particular, Jefferies & Co. said it's puzzled by some of Constellation's characterizations of depreciation, cash flow and mark-to-market adjustments in recent financial material.

59.     The Jefferies & Co. report stated in part:

**Among the accounting questions that continue to puzzle us is the company's characterization of depreciation**.  Page 26 of the company's Q108 presentation and page 24 of its Q208 presentation indicate a starting point for 6-month depreciation of $288 million ($146 million in the 1Q presentation and $142 million in 2Q which is consistent with the June 2008 10Q income statement depreciation number of $290.2 million).  In the June 2008 Constellation 10Q, the income statement depreciation number is $50 million higher than the $240.5 million cash flow depreciation.  Yet the adjustments outlined on pages 24 and 26 are all positive, adding to cash flow (roughly $50 million each quarter).  The company fails to explain the negative adjustment, which accounts for the $50 million difference between the cash flow statement and the income statement.

–     **These unexplained adjustments to depreciation carry through to the company's characterization of cash flow in slide 20 of the Q1 presentation and slide 19 of the Q2 presentation versus cash flow from operations in the company's 10Q**.  The cash flow numbers in the slides ($262 million and $474 million, respectively) are $203 million higher than net cash provided by operating activities ($533.4 million) on page 6 of the 10Q.

–     **And to company's characterization of Merchant EBITDA**.  Merchant EBITDA numbers on slide 25 of Q1 and slide 23 of Q2 total $874 million ($275 million in Q1 and $599 million in Q2) versus $533.4 million in net cash provided by operating activities for the consolidated total company as reported in the 10Q.  This represents an unexplained difference of $340.6 million excluding the utility's EBITDA (which amounted to roughly $128 million in the company's 10Q).

–     **Finally we would like to better understand the mark-to-market adjustments (included by the company in adjusted EPS) reported in the second quarter 2008**.  Total mark-to-market results increased $248.6 million during the quarter ended June 30, 2008, primarily due to an increase in origination gains of $7.3 million and higher gains from unrealized changes in fair value of $241.3 million.  The increase in gains from unrealized changes in fair value was primarily due to approximately $300 million in higher gains on open positions in our portfolio management and trading business during the quarter.  In addition to the $248.6 million contribution during the quarter of mark-to-market gains, the company added roughly $57 million of mark-to-market losses on non-qualifying hedges to its adjusted EPS calculation for the quarter.  It would appear as if the company's adjusted EPS includes at least $300 million of mark-to-market contribution.  We would be interested in understanding the source of these mark-to-market gains.

60.     By the end of August 2008, Constellation's stock had dropped to $66 per share.

- 15 -

61.    On September 15, 2008, investors and the market became aware of Constellation's exposure to Lehman's bankruptcy, which affected the Company's ability to engage in energy-related trades.

62.    With this news, Constellation's shares plunged to $47.99 from the Company's Class Period high of $97.34 per share.

63.    According to a *Bloomberg.com* article of September 16, 2008:

Constellation Energy Tumbles

> Constellation Energy Group Inc. tumbled 36 percent to $30.76. The biggest U.S. power marketer had the steepest drop in the S&P 500 on concern credit market turmoil will hurt the company's search for a partner to share the risk of its burgeoning energy-trading business.

64.    On this news, Constellation's stock price collapsed from $30.76 per share on September 16, 2008 to close at $24.77 per share on September 17, 2006 – a one day decline of $5.99 per share or 19%.

65.    Defendants were aware of the following material undisclosed information which contradicted their public statements, including in the Registration Statement/Prospectus:

(a)    Defendants were inflating Constellation's results through manipulations relating to the characterization of depreciation expense which inflated the Company's reported cash flows;

(b)    The Company's financial results were inflated by overly optimistic assumptions which were reflected in mark-to-market accounting;

(c)    The Company's exposure to credit problems of trading partners was much greater than represented – in fact, one of Constellation's key trading partners, Lehman, was having severe financial problems; and

(d)    The Company was not on track to report 2008 EPS of $5.25+ per share.

- 16 -

## LOSS CAUSATION/ECONOMIC LOSS

66.    By misrepresenting the Company's financial statements and concealing the impact on Constellation's business of Lehman's problems, the defendants presented a misleading picture of Constellation's business and prospects.  Thus, instead of truthfully disclosing during the Class Period that Constellation's business was not as healthy as represented, defendants misrepresented Constellation's financial outlook and its actual business prospects going forward.

67.    These claims of profitability caused and maintained the artificial inflation in Constellation's stock price throughout the Class Period and until the truth was revealed to the market.

68.    Defendants' false and misleading statements had the intended effect and caused Constellation stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $98.10 per share on February 12, 2008.

69.    As a direct result of defendants' admissions and the public revelations regarding the truth about Constellation's overstatement of income and its actual business prospects going forward, Constellation's stock price plummeted 68%, falling from $81.57 per share on July 30, 2008 to $24.20 per share on September 17, 2008 – a drop of $57.37 per share.  This drop removed the inflation from Constellation's stock price, causing real economic loss to investors who had purchased the stock during the Class Period.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against the Company and the Officer Defendants

70.    Plaintiff incorporates ¶¶1-69 by reference.

71.    During the Class Period, the Company and the Officer Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were

misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

72.    These defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

       (a)    employed devices, schemes and artifices to defraud;

       (b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

       (c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Constellation shares during the Class Period.

73.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Constellation shares.  Plaintiff and the Class would not have purchased Constellation shares at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against the Company and the Officer Defendants

74.    Plaintiff incorporates ¶¶1-73 by reference.

75.    The Company and the Officer Defendants acted as controlling persons of Constellation within the meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, and their ownership of Constellation stock, the Company and the Officer Defendants had the power and authority to cause Constellation to engage in the wrongful conduct complained of

herein.  Constellation controlled the Company, the Officer Defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## COUNT III

### Violations of Section 11 of the 1933 Act
### Against All Defendants

76.     Plaintiff incorporates ¶¶1-69 by reference.

77.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

78.     This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  Plaintiff does not allege that the Officer Defendants and Director Defendants or the Underwriter Defendants had scienter or fraudulent intent, which are not elements of a §11 claim.

79.     The Registration Statement for the Offering was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

80.     Constellation is the registrant for the Offering.  The defendants named herein were responsible for the contents and dissemination of the Registration Statement.

81.     As issuer of the shares, Constellation is strictly liable to plaintiff and the Class for the misstatements and omissions.

82.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

83.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

84.    Plaintiff acquired Constellation shares pursuant and/or traceable to the Registration Statement for the Offering.

85.    Plaintiff and the Class have sustained damages.  The value of Constellation preferred securities has declined substantially subsequent to and due to defendants' violations.

86.    At the time of their purchases of Constellation shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to September 16, 2008.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint.  Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT IV

### Violations of Section 15 of the 1933 Act
### Against the Company, the Officer Defendants and the Director Defendants

87.    Plaintiff repeats and realleges ¶¶1-69 and 76-86 by reference.

88.    This Count is brought pursuant to §15 of the 1933 Act against the Company, the Officer Defendants and the Director Defendants.

89.    The Officer Defendants and the Director Defendants each were control persons of Constellation by virtue of their positions as a director and/or senior officer of Constellation.  The Officer Defendants and the Director Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Constellation.  The Company controlled the Officer Defendants, the Director Defendants and all of Constellation's employees.

90.     The Officer Defendants and the Director Defendants each were culpable participants in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding rescission or a rescissory measure of damages; and

E.     Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  September 22, 2008                COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          SAMUEL H. RUDMAN
                                          DAVID A. ROSENFELD


                                            /S/ Samuel H. Rudman
                                          SAMUEL H. RUDMAN

- 21 -

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

# CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

JOHN MARTIN LLC ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

Acquisitions:

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 06/25/08 | 85,000 shares | $25.00 |
| | | |
| | | |

Sales:

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 06/30/08 | 85,000 shares | $24.74 |
| | | |
| | | |

5.     Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

CONSTELLATION ENERGY

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _____ day of _____, 2008.

JOHN MARTIN LLC
SMITH BASSIN FOR

- 2 -

CONSTELLATION ENERGY